May it please the Court, I am Joshua Glellen, appearing on behalf of the widow in this workers' compensation case. We submit that the administrative tribunals made two errors of law here, one with respect to each of the two federal workers' compensation statutes under which the claim was brought. In each respect, the decision below is supported by authority of the Fifth Circuit. On the first of these points, there is already a direct inter-circuit conflict between that Fifth Circuit decision, Mills v. Director, and a Third Circuit decision which predates it and had held exactly the opposite. That is, that there is not a Citus of Injury requirement in the Outer Continental Shelf Lands Act, which I will call the Lands Act in order to avoid saying Oxla over and over again. The second question is whether the Longshore Act, and I won't even try to say the HUAFCA more than once, whether the Longshore Act maritime employment requirement is dissatisfied per se, as the Fifth Circuit held in the Munguia case, by work in the offshore oil and gas industry. We think that that is simply based on a logical fallacy, based on a misreading of the Supreme Court's opinion in Herb's Welding v. Gray. The text of the Lands Act provision, Section 1333C of Title 43, contains no Citus of Injury requirement. Rather, it contains a Citus of Operations requirement. If the injury occurs as the result of operations conducted on the shelf for the removal of oil and gas, according to the text of that provision, it is covered by the Act. There is no requirement that the injury have occurred on such a platform, certainly not any requirement that it occur either on such a platform or on the high seas over the Outer Continental Shelf. Counsel, it does say the result of operations conducted on the Outer Continental Shelf. Yes. The Third Circuit thought that that was significant, and the Third Circuit is the decision in your favor, as I understand it, right? Yes. Is that Schomburger? Schlumberger, yes. Okay. And in that case, they pointed to that the Longshore Act did have a Citus, but it used the word upon rather than on. And how much are we to make out of that? I don't think either the Third Circuit or we rely on the difference between on or upon. The claim here, as in the Mills case in the Fifth Circuit, is that the injury did occur as the result of operations on the shelf. That is, that what the precise activity in the course of which the injury occurred, there it was platform construction ashore, and here it's cleanup of scrap metal that had come from the offshore platforms. Counsel, I know that the Third Circuit decision, again, favors you. We probably don't have to go as far as the Third Circuit. Do you think the Third Circuit is correct? I do think the Third Circuit is correct. And so that would mean that if Mr. Valladolid had been driving on his way to a pier in order to get on a ship to go out to an offshore drilling rig and was in an accident on one of the freeways in L.A. County, that he would be covered by the Outer Continental Shelf Act. Only if he were in the course of his employment at that time. Now, as there is a going and coming rule, and typically the trip to work is not covered. But if he had to check in at the flocculation plant here at La Conchita and then was traveling from there to the pier to get on the crew boat, which would take him out to the platform, then he is in the course of employment. And we say, yes, there is consistent Lands Act coverage of his employment, which is shelf platform related. Does Mr. Valladolid have any other coverage? He's covered under the State Workers' Comp Act? Probably, although – I understand it may not be as favorable to him. It certainly is not as favorable in recent years, yes. But for whatever reason, his widow was only paid benefits for one year after his death. And I don't understand that to be consistent with California death benefits law under their workers' compensation law. Perhaps Mr. Thomas can tell us what that was about. But what that was about is no part of the record of this Federal claim. So I simply don't know why her benefits ceased after one year under California law. Maybe they weren't even workers' compensation benefits, but some non-occupational benefits. The record here does not show that. But I will say, I do think it's important that concurrent coverage between Federal workers' compensation law and State workers' compensation law, like concurrent coverage between two or more State compensation laws, is not a problem. There's no choice of law requirement in this field of the law. There can be concurrent application. The reason I ask is because the Fifth Circuit decision emphasized heavily the fact that Congress was trying to fill a gap when it adopted the Lands Act. And I just wanted to make sure that this wasn't a part of that gap. I don't think this is a part of that gap, no. Since the decedent's death occurred on land in California, I don't think there's any conceivable objection to the applicability of California compensation law to that death. So this would be an instance of concurrent coverage. Now, I think nevertheless that the Fifth Circuit's view that the compensation provision, like other parts of the Lands Act, was designed only to be a gap filler, is, as the decedent pointed out in Mills, completely rebutted by the legislative history of the compensation provision. Yes, the general impetus for enactment of the Lands Act was to provide a body of Federal law where there may be no applicable law because these platforms are beyond the boundaries of a State. That doesn't mean the States wouldn't apply their workers' compensation laws on these platforms. States, unlike tort jurisdiction now, workers' compensation coverage quite typically is extraterritorial. That's why we have so many situations where there's more than one workers' comp law applicable. The contract may have been in one place. The employment is centered in another. The injury occurs in a third jurisdiction. There are three States whose compensation laws apply to that. And the claimant ends up in the end with the most favorable of the three remedies. The problem, of course, with the Outer Continental Shelf was that it was outside of the State's territorial jurisdiction, so their laws could not be applicable, which is why Congress adopted this provision. As to general law, that's entirely accurate. As to the workers' compensation provision, that's exactly what I'm pointing out is not the case. The State laws do apply extraterritorially. The State workers' comp laws do apply extraterritorially as a matter of course. So Louisiana law would have applied to the Mills case if there had been no Outer Continental Shelf Lands Act. It would have applied to every injury of a Louisiana worker on a platform off the Louisiana coast, for a Louisiana employer or a Texas employer, as long as there were some significant connections with Louisiana. The same thing is true here as to California's compensation law. California has no provisions excluding coverage of an injury that happens outside of the State in the course of employment that was entered into in the State of a California employer and a California worker. California law would have applied. California workers' compensation law. Not California contract law, not California tort law, but California workers' comp law would have applied to injuries on these platforms off the coast of California, even if the compensation provision of the Lands Act had never been enacted. That compensation provision, as originally proposed, as legislative history showed, originally had a provision restricting its application to cases that were not within State compensation law, and that provision was dropped before it was passed. That clause of the provision was dropped before it was passed. So I think the legislative history forecloses the Fifth Circuit majority's view of the limited gap filler role of the workers' comp provision of the Lands Act. The text of the provision has no situs of injury requirement. The scholarly commentary has all been to the effect that the Fifth Circuit exceeded its proper role in reading such a requirement into the Lands Act. But does the but-for requirement in Curtis go too far the other way in simply resting at a causal link rather than a causal link that's tied to the attendant risks of Lands Act operations? Well, that's certainly a to limit a workers' compensation provision to particular risks I think would be unprecedented. In other words, we have a workers' compensation law that perhaps the primary impetus for its passage was unguarded punch presses, but it still applies when the claimant trips over a carpet in the office. But take the facts in Curtis, the individual is driving to the port. In the course of his employment. That's the critical requirement in a workers' compensation. Is he getting paid while he's driving in Curtis? Yes, he is, absolutely. He's on the clock. Okay. He had first had to check in at the employer's office in someplace in New Jersey and then had to drive down the Garden State Parkway to the coast where he would pick up the helicopter that would take him to the offshore platform. So, yes, he was in the course of his employment. If he had simply been on, if he had not been on the clock, there would have been no workers' compensation coverage under any law. That's the typical exclusion. There's a limitation to in the course of employment. The other statute that we relied upon below is the Longshore Act itself. Here again, the Fifth Circuit has authority that we believe is aberrational and wrong. The Maritime Employment Requirement of Section 2.3 of the Longshore Act has been broadly read by the Supreme Court to encompass all aspects of the, what the Supreme Court has denominated the overall process of loading and unloading vessels. Even apart from the question whether this case satisfied that, before we even get there, the basis of the decisions below here, the ALJ's decision in any event, was the Fifth Circuit's ruling in Munguia against Chevron that if it has to do with the offshore oil and gas industry, it is by that fact alone not maritime employment. Even if it is loading, unloading, repairing, or building a vessel. That is based on a classical, logical fallacy. We all know that the statement that not all rectangles are squares does not imply That saves time for rebuttal. You better try to wind this up. Thank you. I will do so exactly at the end of this sentence. The proposition that not all work in this industry is maritime employment does not validly imply that all work in this industry is per se not maritime. When it is maritime, it's covered even though it's part of this industry. Where the Fifth Circuit got the contrary idea, I really can't say from the Munguia opinion, but that's where it's found. Thank you. May it please the Court. Good morning. My name is Michael Thomas. I'm with Thomas Quinn and Krieger, and we represent the Respondents in this action. I'd like to address the Lands Act or OXLA issues first. OXLA, I think, you have to look at the Act itself, and you see that what Congress intended there was to extend the jurisdiction of the Constitution of the United States and the laws of the United States to the outer continental shelf itself. They defined it very specifically as the soil, the seabed, and the artificial structures and artificial islands attached there to.  The purposes are clear. Congress wants to extend U.S. jurisdiction to the development of the mineral resources of the outer continental shelf offshore of the United States. The jurisdictional basis is found in Section 1333A of the Outer Continental Shelf Lands Act, and 1330A doesn't apply to some of the Act, to parts of the Act, or to all parts of the Act except for compensation claims brought by injured workers. It applies to the Outer Continental Shelf Lands Act. It then goes on to adopt Section 1333B, then adopts the Longshore Act for a compensation scheme for injured workers who are outer continental shelf workers that are on the outer continental shelf. It's not an expansion of the coverage that we find in 1333A. It is a limitation. It says that if you're on the outer continental shelf and you're doing Outer Continental Shelf Lands Act work, in other words, you are working to develop the mineral resources of the outer continental shelf for the United States, then you will be covered for workers' compensation benefits by the Longshore Act. What do we do with the phrase, as the result of? That seems to be the troubling phrase. Well, I think you have to be on the shelf doing work. The injury has to be as the result of work that you're doing on the shelf. What would be an example of something where you were on the outer continental shelf but not covered by OXLA for an injury? Perhaps if I went out to the outer continental shelf. So if they were taking a tour group out. A tour group or a health inspector or maybe, I mean, these are enormous facilities. Maybe the coffee machine is broken and somebody needs to go out there and repair it. I don't think that those people are developing the resources of the outer continental shelf. They happen to be. If it's covered by the term employee, isn't that what would separate all of those? Well, they would still be an employee of somebody and they would happen to be on the outer continental shelf. Well, what would you say about an employee? It doesn't mean that you're unemployed as opposed to have a job with someone. They're talking about an employee for the purpose of the operations conducted on the outer continental shelf. So if you're referring to an employee of the particular employer that is operating the platform, Your Honor, is that what we're talking about? Is that what your question is? Well, I don't want to get us off on a side issue. But an injury occurring as a result of operations conducted on the outer continental shelf, wouldn't it be easier to say any injury occurring on the outer continental shelf? Well, I think it would be easier, but if Congress had intended it to mean the other, that all persons related in any way to the development of the resources of the outer continental shelf, I believe Congress would have said any injury related to the outer continental shelf, not on the continental shelf. This is also, I don't think you can get to B without going through A. A provides the foundational basis for which we get to B. It provides the jurisdiction, the scope of the coverage of this Act. And it doesn't, it doesn't, B doesn't say that that jurisdiction, that that scope of coverage is eliminated by virtue of the fact that Congress decided to fill a gap and put a workers' compensation scheme, a Federal scheme that already exists, which had already been extended to Defense-Based Act employees and to Nonappropriate Funds Instrumentalities Act employees. So that's what they were looking to do, but they, I think, I think that the, the, for the purposes of exploring, it has to do with, with being out on the, out on the shelf itself. And I don't think, Your Honor, that we need to turn too much further than, than the U.S. Supreme Court's decision in the. Tell me, why do you think A limits this? Excuse me, Your Honor? Why do you think A limits this? Because A defines what the scope of, of the coverage of the Outer Continental Shelf Lands Act is. It, it extends it, it, the constitutional laws and civil and political jurisdiction in the United States are extended to the subsoil and seabed of the Outer Continental Shelf and to all artificial islands and all installations and other devices permanently or temporarily attached to the seabed for the purposes of development. If I wanted to say that, can't you also say in, in another provision that anything that occurs as a result of what happens there is compensable? I think that's a great question. What's, what's inconsistent about that? I think what's inconsistent is the, is that they, they didn't mean to cover non-shelf workers who happened to be on the Outer Continental Shelf at that time. I don't think they wanted to cover people who were there fortuitously. No, no. I'm saying that not, not covering people there fortuitously. But when you say the laws of the United States extend to the Outer Continental Shelf, and then why is it inconsistent to say as to that Outer Continental Shelf, if something happening there causes an injury somewhere near it, that that injury is covered? What's inconsistent about it? Well, I, I, it's, it's inconsistent in that they're only meaning to, to extend the benefits to shelf workers as opposed to the other. Well, that's the conclusion. But what's inconsistent is saying we're extending the laws of the United States to the, to the Outer Continental Shelf. And one of the things we're saying is that if something occurs as a result of what Because I don't think they intended to cover anybody onshore. That's the question of what the intent is, not whether the language is inconsistent. Well, and, and in fact, it, it, it doesn't cover anybody onshore, which I think is the, is the point. That's the extension that the Petitioners are trying to make in this case. And I, I, forgive me, Your Honor, if I'm just not understanding your question. I'm just, the question is why is it inconsistent to say the laws of the United States extend to X, and anything that happens on X that is the cause of an injury is going to be covered, compensated? Well, there would nothing, there would be nothing inconsistent with that, Your Honor. But that's not what Congress did, and we're left to try to figure out what, what it means. Well, I mean, that's, it may not have done that, or it may have, but I, I, I don't know, I'm not asking you is there anything inconsistent between extending the laws of the United States, let's say, to Tokyo. Laws of the United States can apply to Tokyo from now on. And then one of the things that results, that, that, that we also say is that anything that occurs in Tokyo that causes an injury in the Marianas is also covered. Okay. That would, that would be consistent if that was what Congress was trying to do. But in this particular case, they extended the laws in A to the Outer Continental Shelf. Right. And then they, in B, they said we need to have a workers' compensation scheme for these shelf workers that are going to be, to be present on the Outer Continental Shelf, potentially outside of state jurisdiction. It says that any injury occurring as a result of something that went on in Tokyo. Couldn't Congress have written in a situs provision in B congruent with A? I'm sorry, Your Honor? Couldn't Congress have written in B a situs provision congruent with A? They could have, but they didn't, but they also didn't. Isn't that the point? They use different language as a result of. Well, they use as a result of disability or death of an employee resulting from any injury occurring as a result of operations conducted on the Outer Continental Shelf. There appears the same language on the Outer Continental Shelf. And I, I would, perhaps if Congress had written this with some commas, we, we might have a better idea of what they intended, but they certainly didn't exclude the language on the Outer Continental Shelf. Right. But is the, does the word result in the syntax there limit the coverage to results that occur on the Outer Continental Shelf? Resulting from any injury occurring as a result of operations conducted on the Outer Continental Shelf. So the operations have to be conducted. The injury has to be related to some operation occurring there.  Not to some operation occurring onshore. And, and certainly, Your Honor, we wouldn't probably be here having this, this discussion if this were a little bit clearer. I think the Talenteer Court actually clarified it. They, they specifically said there is a situs provision. Now, that case didn't have to do with, with widows claiming benefits or compensation benefits under the Lands Act. But they were claiming that they needed to use the Lands Act's law, which will borrow a neighboring state's wrongful death statute. And the Talenteer Court goes through three pages of, of discussion of the situs requirement of the Lands Act. And in the end says, there's a situs requirement. This did not occur on the shelf or on one of the artificial islands. And therefore, you cannot avail yourself of OXLA's provision, which allows you to use the Louisiana wrongful death statute. And that was a unanimous holding by the court. There, the, the, the dissent concurred with that part of the decision. And, and then on other grounds dissented. So, I, I think that the Talenteer Court disposed of this if Herb's Welding didn't before that. Because even Herb's Welding distinguished that there, there are harsh territorial boundaries to, to the Lands Act. We further get to, I, I wanted to clarify one thing. I, I have about three minutes. State law is not, not applying extraterritorially. And some states do and some states don't. The State does not have to extend its workers' compensation program beyond the boundaries of that State. The State of California will. There are, if you, if you enter into a work, a contract in the United States and you go work in London, you will get State workers' compensation benefits if you're injured there. In this particular case, there is a, a mistake that's been, that's been made, I believe, which is that Ms. Vallottolid only received one year of benefits. She actually received a year of benefits from the employer and then continued benefits from the California workers' compensation carrier. So she did receive benefits in this case and, and the State Act did pick this up, as it appropriately should, because this was a land, a shore-side injury. Did she receive more than one year's worth of workers' comp benefits? Yes, Your Honor. I, I believe at that time, and, and the date of injury escapes me here, but I, I believe it was a benefit that would have been, she would have been paid weekly, probably at 490 a week. And then that benefit would have extended until the point that she had received. I believe it's, it's either $125,000 or $250,000. If, not that that matters in the law, but she did receive California workers' compensation benefits. I don't think that was really before the court below us at the summary judgment time. I, I'd like to just touch on, also this Court in, in the A.Z. Phillips case acknowledged a CITUS requirement. That case was actually a Lands Act worker who claimed benefits under the Lands Act. And the ALJ in that case found that the, that the injury did not occur on the platform and, therefore, denied it. The injury did not occur, period. Isn't that the basis for this? Well, and that's, well, and, and whether or not, there were some problems, certainly some credibility problems in that case for the claimant. And there, there are none here. But the, the Ninth Circuit in its decision did state that there is a CITUS requirement and cited the, the Talentier Court. Also, the Robarge case, which Petitioners rely on, Robarge was on the Outer Continental Shelf. And there are two quotes in that case where the, the comment is made that the Lands Act extends the scope of coverage of the Longshore Act to include work on the Outer Continental Shelf. And, and, and so that case, if anything, stands for the proposition that there's also a, a CITUS. With regard to, to the Longshore part of this, this is not a maritime site. This is a non-maritime site. I don't think we need to get past CITUS. The VRB didn't get past CITUS. And unless Your Honors have any questions, I think I'm out of time. Very good. I think you're the first person today to finish on time. I have more. Thank you, counsel. Thank you, Your Honor. May it please the Court, just a couple of quick points. First, the Benefits Review Board's decision at page 2, footnote 2, recounts that the claimant was paid for 52 weeks following the decedent's death under California Workers Compensation Act. I don't know why that is, but that's all the record contains on the subject. Mr. Thomas says that Section 30 It's probably a death benefit, and, you know, how many weeks it took to pay it off probably doesn't matter. Yeah, I, I, I don't know, but the, the, the recovery is $40,000, not 100, based on what the board said, which is not very much for her husband's death. Okay, well, let's get down to the law. Mr. Thomas says that Section 33A applies to all provisions of the Act. I wonder, then, why the National Labor Relations Act provision, Section 1333C, explicitly says the NLRA applies to any unfair labor practice occurring on such platforms. I wonder why there's a difference, even within subsection A, between the extension of civil and political jurisdiction and the extension of adjacent state law as federal law. They have different applications, as the Fifth Circuit itself has recognized, because the terms of A1 and the terms of A2 are different. Yeah, although, although there's a, there may be good reason for that. You could have operations that would be on the Outer Continental Shelf that might not necessarily be on an artificial island installation or other device. Those are fixed, those are fixed platforms. With the installations and other devices. Those are, we're talking about the difference between tort and a labor dispute. We're not going to have a labor dispute on the high seas. We're only going to have a labor dispute on some kind of fixed place where the workers are working. Well, not quite true, because many of the vessels, many of the drilling rigs are not fixed at all. They are vessels. Sort of living and working accommodation, which is a little different from accidents that might occur on the seas around, on the Outer Continental Shelf in the vicinity of a platform, but not necessarily be on the platform. There's a difference between tort and labor here that I think could offer an explanation. Oh, absolutely. And I, there is an intentional difference between A1 and A2. They have different scopes of application. The question is, does B also have its own distinct scope of application? I'm not sure that the Fifth Circuit's decision in Mills does not limit the workers' compensation provision to either the geographical scope of A1 or that of A2. They make up a completely different one. In fact, it's precisely the one that the Supreme Court in Talentire rejected as the measure of the extension of adjacent state law as surrogate federal law. That is, the Fifth Circuit in Talentire, before being reversed by the Supreme Court, said, well, on the platforms or on the water near the platforms or between the demarcation, beyond state territorial waters, we'll apply this adjacent state law as surrogate federal law to a helicopter crash or a crew boat injury that occurs on the high seas over the Outer Continental Shelf. The Supreme Court said, no, that's not what A2, what the extension of adjacent state law provides. Yet, that is what the Mills Court arrived at as the measure of the scope of B. They made it up out of whole cloth. That is not proper. It is not in the statute. Okay. Thank you, counsel. Thank you very much. Thank you both very much. The case just argued will be submitted.
judges: Selna, Reinhardt, Bybee